**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

TREVON DESHON CHAPMAN, SR.,

        Plaintiff,

    v.

JAMES PROCTOR, et al.,

        Defendants.

CIVIL ACTION NO.: 2:20-cv-91

## ORDER AND REPORT AND RECOMMENDATION[1]

This matter is before the Court on Defendants James Proctor, Rob Mastroianni, Eric Watson, Charles Grant, Buck Aldridge, James Minor, Willie Phillips, Sherard Savage, Luis Vallejo, and Jennie Sikes' Motion for Judgment on the Pleadings. Doc. 35. Plaintiff filed a Response, and Defendants filed a Reply. Docs. 41, 43. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion and **DIRECT** the Clerk of Court to enter the appropriate judgment in favor of Defendants as to Plaintiff's:

1. Fifth Amendment claim against Mastroianni, Sikes, and Watson;

2. Fourteenth Amendment deliberate indifference to a serious medical needs claim against Defendants Watson, Sikes, and Mastroianni;

3. Fourteenth Amendment conditions of confinement claim against Defendants Watson, Sikes, and Mastroianni;

---

[1] The undersigned **VACATES** his November 30, 2021 Report and Recommendation. The November 30, 2021 Report contained typographical errors about which Defendants to terminate and what claims remained pending. The instant Report corrects those mistakes. However, the Reports are otherwise identical. Specifically, in the previous Report, the undersigned recommended the Clerk of Court terminate Defendants Sikes, Minor, and Phillips. Doc. 47 at 2. This was incorrect; instead, as explained here, Defendants Sikes, Mastroianni, and Proctor should be terminated as Defendants. Further, Plaintiff's excessive force claim against Defendant Minor should also remain pending.

4.      First Amendment access-to-courts claims against Defendants Proctor, Watson, Sikes, and Mastroianni;

5.      First Amendment free exercise claim against Defendants Watson, Sikes, and Mastroianni; and

6.      First Amendment mail claim against Defendants Watson, Sikes, and Mastroianni.

Doc. 35.  Based on these recommendations, I also **RECOMMEND** the Court terminate Sikes, Mastroianni, and Proctor as Defendants in this case.  Plaintiff's claims for excessive force against Defendants Minor, Phillips, Savage, Grant, Vallejo, Dillio, Aldridge, and Watson remain pending.

## PROCEDURAL HISTORY

Plaintiff initially filed his Complaint on August 25, 2020, doc. 1, and the Court conducted frivolity review, doc. 11.  In the resulting Report, I recommended dismissal of several of Plaintiff's claims.  Id.  In lieu of objections, Plaintiff requested leave to amend, doc. 14, which the Court granted, doc. 16.  Plaintiff then timely complied with the Court's Order directing him to file an Amended Complaint.  Doc. 32.  In response to Plaintiff's Amended Complaint, Defendants initially filed an Answer and have now filed the instant Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c).  Doc. 35.

## BACKGROUND

Plaintiff brings several claims in his 42 U.S.C. § 1983 suit concerning events occurring while he was incarcerated at the Camden County Jail as a pretrial detainee.  Doc. 32.  Plaintiff's claims arise from his placement in a suicide prevention cell from August 2, 2018 to August 18, 2018, as well as the forced removal of Plaintiff's clothing and placement in a restraint chair on August 9, 2018.  Id. at 11–12.  Plaintiff alleges Defendants Proctor, Mastroianni, Sikes, and Watson decided on August 2, 2018, to place him in a suicide prevention cell even though he was not suicidal or threatening to harm himself.  Id. at 9.  Defendants Watson and Sikes informed

Plaintiff he was placed in the suicide prevention cell to prevent any further damage to the facility by Plaintiff.  Id. at 11.

On August 2, 2018, Defendants Aldridge, Dillio, Minor, Vallejo, and Watson escorted Plaintiff to the suicide prevention cell.  Id. at 9, 11.  While placing Plaintiff in the cell, Defendants Aldridge, Dillio, and Vallejo held Plaintiff down while Defendant Minor repeatedly struck Plaintiff in the head.  Id. at 9, 11.  Plaintiff asserts this assault by Defendants Aldridge, Dillio, Minor, and Vallejo violated his Fourteenth Amendment rights.  Id. at 9.  Additionally, while being held down, Defendant Watson cut off Plaintiff's clothing.  Id.

Plaintiff alleges he was again assaulted on August 9, 2018, by Defendants Phillips, Savage, and Grant.  Id. at 6, 9.  Defendants Phillips and Savage grabbed Plaintiff, slamming him to the ground.  Id. at 12.  Defendant Phillips then kneeled on Plaintiff's neck, restricting his breathing.  Id.  Then, Defendants Phillips, Savage, and Grant placed Plaintiff in a restraint chair for two hours, during which time he was also handcuffed.  Id. at 6–7.  As a result of placement in the restraint chair and being handcuffed, Plaintiff had to have a fingernail removed, and a nurse observed nerve damage and calcium build-up on his wrists .  Id. at 10.  Plaintiff also asserts a Fourteenth Amendment excessive force claim for the assault and placement in the restraint chair. Id. at 6–7, 9.

Furthermore, Plaintiff contends the conditions of his confinement in the suicide prevention cell violated his constitutional rights.  Id. at 11–12.  While in the suicide prevention cell, Plaintiff was not provided with a bed, toilet, sink, clothing, or adequate heating and often had to choose between showering, using the restroom, exercising, or accessing the law library during his time outside the cell each day.  Id. at 11.  Plaintiff was denied toiletries, was not able to wash his hands or otherwise clean himself inside the cell, and was not provided with utensils

with which to eat.  Id.  Plaintiff was also denied his medically necessary hernia strap by Defendant Mastroianni, Sikes, and Watson, which made it painful for him to eat, sleep, and defecate, and constituted deliberate indifference to a serious medical need.  Id. at 6, 11.  Plaintiff complained to Defendants Proctor, Mastroianni, and Watson about the conditions of his confinement to no avail.  Id. at 9

Additionally, while in the suicide prevention cell, Plaintiff states he was not provided legal materials, allowed to make phone calls relating to his legal matters, or given time to complete legal research, even though he was preparing to defend himself on a criminal charge. Id. at 6.  When Plaintiff tried to alert the state court of the difficulties he was facing, Defendant Proctor prevented Plaintiff from doing so.  Id. at 9, 12.  Based on the difficulties Plaintiff faced preparing for his criminal case and Defendant Proctor's interference in court, Plaintiff brings a First Amendment access-to-court claim.  Id. at 6, 7, 12.  Similarly, Plaintiff alleges Defendants Watson, Sikes, and Mastroianni denied Plaintiff religious materials and restricted Plaintiff's access to mail, violating his First Amendment rights.  Id. at 6.  Finally, Plaintiff alleges Defendants Mastroianni, Sikes, and Watson violated the Double Jeopardy Clause of the Fifth Amendment by placing Plaintiff in the suicide prevention cell as punishment for allegedly damaging the facility and then prosecuting him for the same.  Id.

## DISCUSSION

Defendants now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on Plaintiff's claims arising under the First, Fifth, and Fourteenth Amendments. Doc. 35, 43.  However, Defendants do not seek judgment on the pleadings of Plaintiff's excessive force claims.  Id.  Plaintiff opposes Defendants' Motion in its entirety.  Doc. 41.

## I.      Judgment on the Pleadings Standard

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotation omitted).  The court "accept[s] as true all material facts alleged in the non-moving party's pleadings, and [views] those facts in the light most favorable to the non-moving party." Id.  As a motion for judgment on the pleadings under 12(c) and a motion to dismiss under 12(b)(6) are almost identical in form and relief, courts apply the same legal standard in assessing both motions.  See Mobile Telecommunications Techs., LLC v. United Parcel Serv., Inc., 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016) ("The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6).") (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).

Under the Rule 12(b)(6) standard, the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits.  Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a pro se litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## II.    Analysis

Defendants move for judgment on the pleadings on Plaintiff's: Fifth Amendment double jeopardy claim; Fourteenth Amendment deliberate indifference to serious medical needs claim; Fourteenth Amendment conditions-of-confinement claim; First Amendment access-to-courts claim; First Amendment free exercise claim; and First Amendment mail claim. Docs. 35-1, 43.

### A.    Plaintiff Fails to State a Fifth Amendment Claim

Defendants argue they are entitled to judgment on the pleadings because Plaintiff's placement in a suicide prevention cell is not a criminal punishment, and, therefore, his subsequent prosecution for destruction of government property does not violate the Double Jeopardy Clause. Doc. 35-1 at 7–8.

Plaintiff alleges Defendants Mastroianni, Sikes, and Watson violated the Double Jeopardy Clause of the Fifth Amendment by punishing him for allegedly damaging the facility and then prosecuting Plaintiff for the same conduct. Doc. 32 at 6, 8, 11. Plaintiff offers nothing

more than conclusory arguments that Defendants' actions violated his Fifth Amendment rights in his Response.[2]  See Doc. 41 at 4.

Plaintiff fails to state a claim under the Fifth Amendment.  The Fifth Amendment states, in part, no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Double Jeopardy Clause protects individuals against three distinct violations: (1) "a second prosecution for the same offense after acquittal"; (2) "a second prosecution for the same offense after conviction"; and (3) "multiple punishments for the same offense."  North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794 (1989).

Plaintiff argues Defendants Mastroianni, Sikes, and Watson punished him with disciplinary sanctions for allegedly damaging the prison and then punished him again by prosecuting him for the same alleged conduct.  The United States Supreme Court has recognized, however, the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "in common parlance, be described as punishment."  Hudson v. United States, 522 U.S. 93, 98–99 (1997) (internal quotation omitted)).  The Clause protects only against the imposition of multiple criminal punishments for the same offense.  Id. at 99 (quotations omitted).  The Double Jeopardy Clause does not apply to proceedings that are not "essentially criminal."  Breed v. Jones, 421 U.S. 519, 528 (1975).  Prison disciplinary proceedings are not part of a criminal prosecution.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

As the Eleventh Circuit Court of Appeals recognized in a double jeopardy challenge by federal prisoners to criminal charges based upon the same offense conduct as disciplinary

---

[2]     To the extent Plaintiff makes new factual allegations not contained in his Amended Complaint, such allegations are not considered as part of this analysis.  Fed. R. Civ. P. 12(c); Roberts v. Carnival Corp., 824 F. App'x 825, 826 (11th Cir. 2020).

sanctions previously imposed by the federal Bureau of Prisons, "Prison officials have no authority to alter the inmates' original criminal sentences.  They merely implement disciplinary proceedings that may, at most, change the conditions of the inmates' confinement for purposes of maintaining institutional order and encouraging compliance with prison rules."  United States v. Mayes, 158 F.3d 1215, 1224 (11th Cir. 1998).  The Mayes court held the prison disciplinary sanctions imposed, which included a combination of disciplinary transfers to maximum security prisons, disciplinary segregation for 60 days, disallowance of between 41 and 94 days of accrued good conduct time, temporary losses of telephone, commissary, and/or recreational privileges, and losses of visitation privileges for up to one year, were not so punitive as to override the government's intent to create remedial administrative penalties for inmate misconduct.  Id.  Accordingly, the court declined to classify the regulations as "criminal" and rejected the inmates' double jeopardy challenges to their subsequent criminal prosecutions.  Id.  Based upon the Mayes decision, Plaintiff cannot establish his punishment, including placement in the suicide prevention cell for 16 days, denial of privileges, and a diet of nutraloaf constitutes criminal punishment for double jeopardy purposes.  Id.; see also Fogel v. Pierson, 435 F.3d 1252, 1262 (10th Cir. 2006) (holding disciplinary sanctions do not constitute criminal punishment for double jeopardy purposes).

Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Defendants' Motion for Judgment on the Pleadings and enter judgment in favor of Defendants Mastroianni, Sikes, and Watson on Plaintiff's Fifth Amendment claim.

### B.    Plaintiff Fails to State a Deliberate Indifference Claim

In his Amended Complaint, Plaintiff alleges Defendants Watson, Sikes, and Mastroianni violated his Fourteenth Amendment rights by denying him his hernia belt.  Doc. 32 at 6.

Defendants argue Plaintiff's Fourteenth Amendment deliberate indifference to a serious medical needs claim against Defendants Watson, Sikes, and Mastroianni fails because Plaintiff's Amended Complaint does not provide facts sufficient to meet the subjective component of a deliberate indifference claim.  Doc. 35-1 at 8–10.

Plaintiff's Response to this portion of Defendants' Motion includes only conclusory arguments relating to Defendants' purported violation of Camden County Jail Policy.  Doc. 41 at 4.  However, allegations Defendants violated Camden County Jail Policy alone do not give rise to a claim upon which relief may be granted.[3]  Wilson v. Bussey, No. CV 113-054, 2014 WL 2040109, *5 (S.D. Ga. May 12, 2014) (citing Sandin v. Conner, 515 U.S. 472, 481–82 (1995)).  That is, violation of prison policies or procedures, standing alone, does not infringe upon an inmate's constitutional rights.  See Fischer v. Ellegood, 238 F. App'x 428, 431 (11th Cir. 2007) (finding plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment).  Thus, Defendants' purported failure to follow the prison policies alone cannot form the basis for Plaintiff's deliberate indifference claim.

Indeed, Plaintiff fails to state a viable claim for deliberate indifference against Defendants Watson, Sikes, and Mastroianni.  "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and plaintiff's injury."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009); see also Patel v. Lanier County, 969 F.3d 1173, 1188 (11th Cir. 2020).  "[I]n order to prove that a deputy acted

---

[3]      Plaintiff's Response in this section also contains allegations Defendants were deliberately indifferent to his serious medical needs because he was forced to eat nutraloaf and his commissary purchases were confiscated.  Doc. 41 at 4.  However, these allegations are wholly irrelevant to whether Defendants were deliberately indifferent to a serious risk to his health, as they do not implicate a medical need, let alone indifference to such a need.

with deliberate indifference, [p]laintiffs must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence." Mann, 588 F.3d at 1306–07 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)).[4]

The extent of Plaintiff's allegations is Defendants Watson, Sikes, and Mastroianni denied him his approved hernia strap. Doc. 32 at 6. However, Plaintiff's Amended Complaint contains no allegations which show Defendants had subjective knowledge of a risk of serious harm or that they disregarded that risk. Put differently, the allegations in Plaintiff's Amended Complaint do not demonstrate Defendants had knowledge of any risk posed by Plaintiff's hernia or being without his hernia strap or they subsequently disregarded the risk of Plaintiff's hernia.

While Plaintiff states in his Response he informed "staff" of his hernia, his claim still fails. Doc. 41 at 2. First, this allegation is not contained in his Amended Complaint and, thus, cannot be considered. Volk v. Zeanah, No. 608CV094, 2010 WL 318261, at *4 (S.D. Ga. Jan. 25, 2010) (explaining a court cannot consider new factual allegations outside of the pleadings without violating Rule 12); Ivax LLC v. Celgene Corp., No. 12-61917-CIV, 2013 WL 12085972, at *2 (S.D. Fla. Mar. 7, 2013) ("[I]t is improper to raise new factual allegations for the first time in response to a motion for judgment on the pleadings."). Further, even considering this allegation, Plaintiff's claim fails. It is still not clear the staff he refers to includes Defendants Watson, Sikes, and Mastroianni, which is what he is required to allege to satisfy the subjective knowledge element of his claim. Because Plaintiff fails to allege in his Amended Complaint Defendants had any subjective knowledge of a serious medical need, Plaintiff fails to state a

---

[4]     The standards governing a pretrial detainee's Fourteenth Amendment deliberate-indifference claim are "identical to those under the Eighth." Patel v. Lanier County, 969 F.3d 1173, 1188 (11th Cir. 2020) (quoting Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007)).

claim under the Fourteenth Amendment.  McNerney v. Hall Cnty. Bd. of Comm'rs, No.

209CV00038, 2010 WL 883756, at *2 (N.D. Ga. Mar. 5, 2010).

Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Defendants' Motion

for Judgment on the Pleadings and enter judgment in favor of Defendants Watson, Sikes, and

Mastroianni on Plaintiff's Fourteenth Amendment deliberate indifference to a serious medical

needs claim.

### C.  Plaintiff Fails to State a Conditions of Confinement Claim

Plaintiff alleges, while in the suicide prevention cell, the conditions imposed violated his

constitutional rights.  Doc. 32 at 11–12.  Defendants move for judgment on the pleadings for

Plaintiff's Fourteenth Amendment conditions of confinement claim.  Doc. 35-1 at 10–12.

"[T]he Constitution does not mandate comfortable prisons."  Chandler v. Crosby, 379

F.3d 1278, 1289 (11th Cir. 2004) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

Rather, the Eighth Amendment requires that prisoners are afforded adequate food, clothing,

shelter, and medical care, and prison officials must take reasonable measures to ensure prisoner

safety.[5]  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "However, "inmates cannot expect the

amenities, conveniences and services of a good hotel."  Alfred v. Bryant, 378 F. App'x 977, 980

(11th Cir. 2010).

Challenges to conditions of confinement are subject to a two-part analysis.  Chandler,

379 F.3d at 1289.  First, Plaintiff must satisfy an objective prong by showing the conditions

about which he complains are sufficiently serious.  Id.  The conditions of his confinement must

---

[5]      "In evaluating the conditions of confinement for pretrial detainees, [courts] look to the Due
Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, though the minimum
standard[s] allowed by the due process clause [are] the same as th[ose] allowed by the [E]ighth
[A]mendment for convicted persons."  Jacobs v. Georgia, 820 F. App'x 882, 887 (11th Cir. 2020) (citing
Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985)) (internal quotation marks omitted).

be "extreme" such that they "pose[] an unreasonable risk of serious damage to his future health or safety."  Id.; see also Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010); Ivory v. Warden, 600 F. App'x 670, 676–77 (11th Cir. 2015).  "The risk must be 'so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'"  Redding v. Georgia, 557 F. App'x 840, 843 (11th Cir. 2014) (quoting Helling v. McKinney, 509 U.S. 25, 33 (1993)).

Second, Plaintiff must satisfy a subjective prong by showing Defendants acted with a culpable state of mind, which is judged under a "deliberate indifference" standard.  Chandler, 379 F.3d at 1289.  "Proof of deliberate indifference requires a great deal more than does proof of negligence."  Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013).  The prison official must know of and disregard an "excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.  In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."  Id.

Plaintiff was confined in the suicide prevention cell from August 2 to August 18, 2018.  During that time, Plaintiff alleges he did not have a bed, toilet, sink, clothing, toiletries, utensils, or adequate heat, was unable to use the grate in his cell, which functioned as a toilet, to defecate, and he was not able to wash his hands or clean himself while in the cell.[6]  Doc. 32 at 11–12.  However, Plaintiff also states he was permitted to leave his cell to shower, use the restroom, or exercise for a period of time each day.  Id. at 11.

---

[6]      Plaintiff's Response is limited to additional factual allegations, which the undersigned is precluded from considering.  See Doc. 41 at 2–4 (providing new allegations on his conditions of confinement, such as that the grate in his cell was "excrement encrusted").  Instead, the analysis focuses on the allegations contained in Plaintiff's Amendment Complaint.

Plaintiff's lack of bed, toilet, toiletries, utensils, and sink, inadequate heat, and inability to clean himself while in the suicide prevention cell does not amount to a violation of his constitutional rights.  See Alfred v. Bryant, 378 F. App'x 977, 980 (11th Cir. 2010) (affirming dismissal of Eighth Amendment claim based on confinement in cell for eighteen days without properly functioning toilet and noting that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel"); Anderson v. Chapman, No. 312-CV-88, 2013 WL 4495827 (M.D. Ga. 2013) (granting defendants summary judgment where prisoner alleged placement on suicide watch for five days with no access to clothing, mattress, blanket, toilet paper, water or showers, and forced sleeping on floor with dried urine, blood and feces), aff'd, 604 F. App'x 810, 814 (11th Cir. 2015); Dixon v. Toole, No. CV 104-183, 2006 WL 1038433, at *5 n.8 (S.D. Ga. Apr. 13, 2006) (finding no constitutional violation where an inmate was placed in a suicide prevention cell without a toilet); Beard v. Strength, No. CV 108-002, 2008 WL 2754094, at *3 (S.D. Ga. July 14, 2008) (rejecting an inmate's claim that being forced to sleep directly on the floor during periods of overcrowding violated his Eighth Amendment rights); Radford v. Thomas, No. 2:13-CV-188, 2016 WL 3919483, at *18 (M.D. Ala. Mar. 1, 2016) (holding inadequate restroom facilities, lack of access to a restroom and water while on the yard, and denial of sufficient hygiene items does not establish a conditions of confinement claim); White v. Marshall, No. 2:08cv362, 2008 WL 4826283, *3, *8–9 (M.D. Ala., November 5, 2008) (explaining plaintiff's confinement for 30 days in a strip cell with no clothing except for a paper gown, no mattress for 24 days, and no blanket was not a deprivation of "the minimal civilized measures of life's necessities"); Jones v. Rodgers, No. 5:18-CV-78, 2019 WL 3997421, at *4 (M.D. Fla. Aug. 23, 2019) (dismissing plaintiff's claims where he alleged he had "no adequate drinking water, a leaking toilet, no working heater (during bitter cold), [and] no winter clothing").  This is

especially true where Plaintiff was only confined in these conditions for 16 days, admits there was a grate in the floor for him to use to relieve himself, and that he was permitted to use the restroom and shower each day when he was let out of his cell.

In sum, Plaintiff's allegations fail to demonstrate any deprivation of the minimal civilized measure of life's necessities.  <u>Chandler</u>, 379 F.3d at 1289.  Plaintiff's allegations are not the sort of extreme prison conditions that create a substantial risk of serious harm.  <u>Id.</u>; <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) (noting conditions of confinement claims must demonstrate "extreme" deprivations and that such claims are "responsive to 'contemporary standards of decency'").  Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Defendants' Motion for Judgment on the Pleadings and enter judgment in favor of Defendants on Plaintiff's Fourteenth Amendment conditions of confinement claim.

### D.   Plaintiff Fails to State an Access-to-Courts Claim

Plaintiff alleges Defendants interfered with his access to courts on three separate occasions and, therefore, violated his First Amendment rights.  Doc. 32.  First, Plaintiff states Defendants Watson, Sikes, and Mastroianni generally interfered with his ability to prepare for his criminal trial, including restricting access to legal materials and denying him phone calls related to his legal proceedings.  <u>Id.</u> at 6.  Plaintiff also contends Defendant Proctor interfered with his access to courts when he interjected during a criminal proceeding as Plaintiff was trying to explain to the court the conditions he was confronted with in jail.  <u>Id.</u> at 7, 12.  Finally, Plaintiff alleges Defendant Mastroianni violated his First Amendment rights by refusing to provide Plaintiff with a copy of his disciplinary violation report.  <u>Id.</u> at 11.  Defendants assert they are entitled to judgment on the pleadings for all of Plaintiff's access-to-court claims. Doc. 35-1 at 13–14; Doc. 43 at 9.

"[P]risoners have a constitutional right of access to the courts."  Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006); see also Lewis v. Casey, 518 U.S. 343, 343 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) ("Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment.").  To have standing to bring an access-to-courts claim, the "inmate alleging a violation of the right of access to the courts must show an actual injury."  Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998) (citing Lewis, 518 U.S. at 349–50).  Not all denials of access result in injury.  Lewis, 518 U.S. at 354–56.  Rather, plaintiffs must show the denial of access related to a non-frivolous, arguable underlying claim.  Harrison v. United States, 577 F. App'x 911, 913 (11th Cir. 2014).  Incarcerated individuals must identify the underlying claim with sufficient enough detail to "give fair notice to the defendants" and show "the 'arguable' nature of the underlying claim is more than hope."  Christopher v. Harbury, 536 U.S. 403, 416 (2002); Arthur v. Comm'r, Ala. Dep't of Corr., 680 F. App'x 894, 903 (11th Cir. 2017); Harrison, 577 F. App'x at 912–13 ("[A] litigant asserting an access claim must identify a colorable underlying claim, ancillary to the right of access to the courts."); Cunningham v. Dist. Attorney's Office, 592 F.3d 1237, 1271 (11th Cir. 2010); Barbour, 471 F.3d at 1226.

Plaintiff does not allege enough in his Amended Complaint to satisfy the actual injury prerequisite to set forth a plausible access to courts claim.  Plaintiff fails to allege Defendants' purported restriction on access to legal materials and denial of phone calls related to his criminal legal proceedings caused him to miss any court-imposed deadlines.  Similarly, he does not explain what, if any, effect Defendant Proctor's interjection had on his criminal case.  Instead, Plaintiff's Amended Complaint, as well as his Response, contain only conclusory assertions

Defendants' actions prevented him from preparing for his criminal trial.  Doc. 32 at 6–7, 12; Doc. 41 at 2, 5.  Indeed, in the injury section of Plaintiff's Amended Complaint, he does not mention any injury resulting from Defendants' alleged denial of his access to courts.  See Doc. 32 at 10.  Further, Plaintiff states he was found not guilty on the pending criminal charges, indicating Defendants' actions did not have any adverse impact on his criminal proceedings.  Id. at 12.  Likewise, Plaintiff has not explained the effect Defendant Mastroianni's refusing to provide him a copy of his disciplinary violation report had on any potential legal claims or that those claims were non-frivolous.

In sum, Plaintiff has not provided any details on how Defendants prevented him from missing any court-imposed deadlines, and he does not provide any information as to any specific claims he was pursuing or whether any such claims were non-frivolous legal claims. Cunningham, 592 F.3d at 1271 ("The allegations about the underlying cause of action must be specific enough to give fair notice to the defendants and must be described well enough to apply the nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.") (internal quotations omitted).  Moreover, Plaintiff fails to show any potential claim is based on more than hope or speculation.  Accordingly, this portion of Defendants' Motion should be **GRANTED** and judgment should be entered in favor of Defendants Watson, Sikes, Mastroianni, and Proctor on Plaintiff's access-to-courts claim.

### E.    Plaintiff Fails to State a First Amendment Free Exercise Claim

In Plaintiff's Amended Complaint, he brings a First Amendment claim, alleging Defendants interfered with his religious beliefs and practices by denying Plaintiff religious materials other than the Bible.  Doc. 32 at 6.  Defendants move for judgment on the pleadings on this claim.  Doc. 35-1 at 15.

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "Prisoners retain their First Amendment rights, including rights under the Free Exercise Clause." Boxer X v. Donald, 169 F. App'x 555, 559 (11th Cir. 2006).[7] However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).

"To establish a violation of his right to free exercise," a plaintiff "must first establish that a state actor imposed a 'substantial burden' on his practice of religion." Wilkinson v. GEO Grp., Inc., 617 F. App'x 915, 917 (11th Cir. 2015) (citing Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1549 (11th Cir. 1993)); see Hoever v. Belleis, 703 F. App'x 908, 912 (11th Cir. 2017) (noting the "substantial burden" analysis in the free exercise clause "is derived from precedents interpreting [RLUIPA]"). "A substantial burden occurs if the conduct complained of 'completely prevents the individual from engaging in religiously mandated activity, or . . . requires participation in an activity prohibited by religion' and, at a minimum, must have 'something more than an incidental effect on religious exercise.'" Hoever, 703 F. App'x at 912 (citations omitted).

Plaintiff states he was deprived of religious materials but was provided a Bible while in the suicide prevention cell from August 2 to August 18, 2018.[8] Doc. 32 at 6. Plaintiff does not

---

[7]     Wimbush v. Conway, 768 F. App'x 958, 968 (11th Cir. 2019) (applying the same standard for First Amendment claims for pretrial detainees and convicted individuals).

[8]     Plaintiff, in his Response, now states he was not provided a Bible. Doc. 41 at 5. As explained earlier, the analysis is limited to the allegations in Plaintiff's Amended Complaint.

describe how the denial of other religious materials interfered with his ability to practice his religion. That is, Plaintiff does not allege he was completely prevented from engaging in religiously mandated activity where he was only provided a Bible but denied other religious materials. And regardless, a temporary 16-day denial of some religious materials does not impose a substantial burden on Plaintiff's religious practices. Hoever, 703 F. App'x at 913 (holding "[a] brief denial of [plaintiff's] study materials [does not] impose a 'substantial burden' on his religious practice"). Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Defendants' Motion for Judgment on the Pleadings and enter judgment in favor of Defendants Watson, Sikes, and Mastroianni on Plaintiff's First Amendment Free Exercise claim.

### F.      Plaintiff's First Amendment Mail Claim Fails

Plaintiff alleges Defendants Watson, Sikes, and Mastroianni censored his outgoing mail, failed to provide him with writing materials, and restricted his right and ability to call or write family or friends. Doc. 32 at 6. Plaintiff provides no other details relating to this First Amendment claim in his Amended Complaint. However, in his Response, Plaintiff further explains he was permitted to contact family via telephone or electronically on the jail's kiosk. Doc. 41 at 2. And Plaintiff further clarifies he was prohibited *unlimited* communication with family and friends but not all communication. Id. at 5 (emphasis supplied).

Defendants argue Plaintiff's allegations are nothing more than "an unadorned claim under the First Amendment," which is insufficient to state a claim. Doc. 35-1 at 15–16. Defendants assert without providing details about the restrictions purportedly placed on his ability to send or receive mail, Plaintiff cannot establish a claim for violations of his First Amendment rights. Id.; Doc. 41 at 10–11.

A convicted prisoner has a First Amendment right to communicate with family and friends. See Wimbush v. Conway, 768 F. App'x 958, 968 (11th Cir. 2019); Perry v. Sec'y, Fla.

Dep't of Corr., 664 F.3d 1359, 1363 (11th Cir. 2011); Pope v. Hightower, 101 F.3d 1382, 1385 (11th Cir. 1996).  While pretrial detainees have a right to "at least some" communication with friends and family, this right is subject to reasonable restrictions based on legitimate order and security concerns.  Hearon v. Conway, No. 1:16-cv-239, 2016 WL 11260752, at *3 (N.D. Ga. Apr. 22, 2016) (citing Feeley v. Sampson, 570 F.2d 364, 374 (1st Cir. 1978); and Pope, 101 F.3d at 1384) (some internal citations omitted)).  Similarly , "[an inmate] has a First Amendment free speech right [to send and receive legal mail]," which is subject to the limitations based on his status as a prisoner and the legitimate penological interests of jail administrators.  Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008).

Here, Plaintiff claims Defendants Watson, Sikes, and Mastroianni interfered with his mail in some way but does not provide any information on how they interfered with or restricted his mail to, or communication with, family and friends.  The vagueness of Plaintiff's claim is fatal to it.  See Kerch v. Johnson, No. 5:17-CV-108, 2017 WL 8813080, at *3 (M.D. Ga. July 21, 2017), *report and recommendation adopted*, 2018 WL 844416 (M.D. Ga. Feb. 13, 2018); Pace v. Lawerance, No. 19-22928-CV, 2020 WL 6064876, at *11 (S.D. Fla. Sept. 25, 2020), *report and recommendation adopted sub nom.*, Pace v. Lawrence, 2020 WL 6059804 (S.D. Fla. Oct. 14, 2020).  Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Defendants' Motion and enter judgment in favor of Defendants Watson, Sikes, and Mastroianni on Plaintiff's First Amendment access to mail claim.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion and **DIRECT** the Clerk of Court to enter the appropriate judgment in favor of Defendants as to Plaintiff's:

1.    Fifth Amendment claim against Mastroianni, Sikes, and Watson;

2.    Fourteenth Amendment deliberate indifference to a serious medical needs claim against Defendants Watson, Sikes, and Mastroianni;

3.    Fourteenth Amendment conditions of confinement claim against Defendants Watson, Sikes, and Mastroianni;

4.    First Amendment access-to-courts claims against Defendants Proctor, Watson, Sikes, and Mastroianni;

5.    First Amendment Free Exercise claim against Defendants Watson, Sikes, and Mastroianni; and

6.    First Amendment mail claim against Defendants Watson, Sikes, and Mastroianni.

Doc. 35.  Based on these recommendations, I also **RECOMMEND** the Court terminate Sikes, Mastroianni, and Proctor as Defendants in this case.  Plaintiff's claims for excessive force against Defendants Minor, Phillips, Savage, Grant, Vallejo, Dillio, Aldridge, and Watson remain pending.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 10th day of January, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA