IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| TREVOR D. CHAPMAN, SR., | |
| Plaintiff, | CIVIL ACTION NO.: 2:20-cv-91 |
| v. | |
| ERIC WATSON, et al., | |
| Defendants. | |

### REPORT AND RECOMMENDATION

This matter is before the Court on Defendants'[1] unopposed Motion for Summary Judgment, filed October 3, 2022.  Doc. 85.  The Clerk of Court mailed a Notice to Plaintiff advising him Defendants filed a Motion for Summary Judgment and a response must be filed by October 24, 2022.  Doc. 87.  The Court's Notice further advised Plaintiff:

1. If you do not timely respond to this motion . . ., the consequence may be the Court will deem the motion unopposed, and the Court may enter judgment against you;

2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence; and

3. If a summary judgment motion is properly supported, you may not rest on the allegations in you [Complaint] alone.

---

[1] Defendant Dillio has not appeared in this case, though service was attempted at least once. See Doc. 30.  Despite this fact, the arguments for summary judgment made by Defendants who have appeared in this case apply with equal force for granting summary judgment to Defendant Dillio.  Therefore, as explained below, I also recommend the Court grant summary judgment to Defendant Dillio on all claims asserted against him.

Id.  This Notice was not returned to the Clerk of Court as undeliverable to Plaintiff.  Further, Plaintiff moved for an extension of time to respond, which the Court granted over Defendants' opposition, giving Plaintiff until December 6, 2022, to respond.  Docs. 88, 91.  Thus, Plaintiff requested and received an extension of time to respond, but Plaintiff still has not filed a response.

However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion."  United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted).  Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).

The time for Plaintiff to file a response has elapsed, and Defendants' Motion is now ripe for adjudication.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' unopposed Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

**PROCEDURAL HISTORY**

Plaintiff brought this suit under 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Doc. 1.  The Clerk of Court received the Complaint and docketed it on August 25, 2020.  Id. at 1.  Plaintiff dated his Complaint August 1, 2020.  Id. at 11.  The Court granted Plaintiff leave to amend his Complaint on January 22, 2021.  Doc. 16.  Plaintiff filed his Amended Complaint on February 12, 2021.  Doc. 32.  The Court granted Defendants Proctor, Mastorianni, Watson, Grant, Aldridge, Minor, Phillips, Savage, Vallejo, and Sikes' motion for judgment on the pleadings on February 18, 2022, leaving pending only Plaintiff's excessive force claims

2

against Defendants Watson, Phillips, Savage, Grant, Miner, Dillio, Aldridge, and Vallejo. Doc. 56.

After a period of discovery, Defendants Watson, Phillips, Savage, Grant, Miner, Aldridge, and Vallejo filed this Motion for Summary Judgment on October 3, 2022.  The only remaining Defendant, Charles Dillio, has not yet appeared in this case, despite the United States Marshals' attempt to serve him.  See Docs. 30, 34.  Defendants argue they are entitled to summary judgment because Plaintiff's claims are barred by the statute of limitations and because they are entitled to qualified immunity.  Doc. 85-2 at 1.

## UNDISPUTED MATERIAL FACTS

It is important to note at the outset the allegations in Plaintiff's unsworn Amended Complaint are not to be considered in resolving Defendants' Motion for Summary Judgment. See Chambliss v. Buckner, 804 F. Supp. 2d 1240, 1248 (M.D. Ala. 2011) ("Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered." (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986))).  Defendants submitted a Statement of Material Fact ("Defendants' SMF") in support of their Motion for Summary Judgment, in accordance with the Federal Rule of Civil Procedure 56 and Local Rule 56.1. Doc. 85-1.  Defendants' SMF is supported by:

1. The declarations of Lisa Chalk, Eric Watson, and William Phillips.  Docs. 85-3, 85-5, 85-6, 85-21.

2. Plaintiff's obligations account statement.  Doc. 85-4.

3. Incident reports of August 2, 2018 and August 9, 2018.  Docs. 85-7, 85-8.

4. Videos of incident and Plaintiff's transportation.  Docs. 85-9, 85-10.

5. Plaintiff's deposition.  Doc. 85-11.

6. A housing report for Plaintiff.  Doc. 85-12.

3

7. Coffee County Detention Facility ("CCDF") Policies. Docs. 85-13, 85-14, 85-17, 85-18.

8. Use of force assessments of August 2, 2018 and August 9, 2018. Docs. 85-15, 85-16.

9. Redacted medical records. Doc. 85-19.

10. Booking card. Doc. 85-20.

Plaintiff has not responded to Defendants' SMF. However, when considering the record at summary judgment, "all justifiable inferences are to be drawn" in favor of the non-movant. Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotations omitted) (quoting Tolan v. Cotton, 572 U.S. 651 (2014)). Thus, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment:

On August 1, 2018, Plaintiff was a pre-trial detainee at CCDF. Doc. 85-1 at 3. Plaintiff was removed from his cell and placed in a holding cell because he repeatedly struck the cell door. Id. On August 2, 2018, Plaintiff was placed in "the suicide cell" in the medical unit to prevent him from injuring himself. Id. The suicide cell is padded and under constant monitoring to prevent detainees from hurting themselves. Id. at 4. Under CCDF policy, detainees in the suicide cell are allowed only a "suicide smock" and a "suicide blanket." Id. Inmates must wear a suicide smock when housed in the suicide cell. Id.

Plaintiff stated he refused to go into the suicide cell and wanted to speak to Defendant Watson, the Assistant Jail Administrator. Id. at 3. After Plaintiff was placed in the suicide cell, Defendant Miner, a CCDF officer, entered the cell and ordered Plaintiff to take off his regular jail uniform, since CCDF policy does not allow regular jail uniforms or undergarments in the suicide cell. Id. at 4. Plaintiff refused to do so. Id. Accordingly, Defendant Miner and

Defendant Aldridge, also a CCDF officer, began to undress Plaintiff. Id. at 5. Defendant Watson arrived and watched the situation develop through the cell door. Id.

Plaintiff told the officers he would not put on the suicide smock. Id. Plaintiff called the officers "motherfucker," said he was not "motherfucking playing," and "you all wanna see me motherfucking turn?" Id. Defendant Miner told Plaintiff to "take it off," referring to Plaintiff's undergarments. Id. Plaintiff removed his undershirt but refused to remove his boxers. Id. Plaintiff turned to Defendant Miner and said, "[W]hat you gonna do?" Id. Plaintiff directly faced Defendant Miner, leaned slightly into him, looked straight into his eyes, and tensed his muscles. Id. at 6. Interpreting Plaintiff's behavior as an intent to engage in a physical altercation, Defendant Watson entered the cell using aggressive language and posture to redirect Plaintiff's attention away from Defendant Miner. Id. Defendant Watson told Plaintiff to finish undressing, but Plaintiff would not comply. Id. In response, Defendant Watson placed a hold on Plaintiff's left arm and brought Plaintiff to the ground with the help of Defendants Miner and Aldridge. Id.

Once on the ground, Defendants' goal was to secure Plaintiff's hands behind his back in handcuffs and remove Plaintiff's regular uniform. Id. Defendants Aldridge, Miner, and O'Neal worked to secure Plaintiff's hands behind his back. Id. Defendant Watson stood on Plaintiff's ankles to prevent Plaintiff from kicking or flipping from his stomach to his back, which Plaintiff was attempting to do. Id. Plaintiff, non-compliant and using vulgar, threatening language, struggled against the officers for nearly one minute before they finally secured him in handcuffs. Id. at 7. Once handcuffed, Plaintiff said, "I can still get up if I really wanted to," then pulled his foot loose from Defendant Watson and kicked him in the shin. Id. Defendant Watson kicked Plaintiff in the thigh twice to prevent any further kicks from Plaintiff and resecured Plaintiff's

5

leg.  Id.  Plaintiff then allowed Defendants to remove the rest of his clothing.  Id.  Defendants released Plaintiff, removed his handcuffs, and backed out of the cell without further incident.  Id. at 8.

Almost immediately after being left in the suicide cell, Plaintiff began to punch the cell door.  Id.  Because punching the cell door is disruptive and could injure Plaintiff, Defendants Watson and Miner reentered the cell, handcuffed Plaintiff, and escorted him to a restraint chair.  Id.  Plaintiff walked independently to the restraint chair without assistance.  Id.  Defendant Vallejo, another CCDF officer, covered Plaintiff in a blanket as he walked to the restraint chair.  Id.  Plaintiff was placed in the restraint chair to cool down where he could not injure himself, government property, or anyone else.  Id. at 9.  Plaintiff was in the restraint chair from 10:03 a.m. until 12:03 p.m.  Id.  After Plaintiff was released from the restraint chair, a medical evaluation noted Plaintiff had no bruising from "head to toe" and had only a small scrape on his right foot.  Id.

On August 8, 2018, Plaintiff was allowed to dress in a jail uniform so he could attend court.  Id.  After the court hearing, Plaintiff was returned to the suicide cell.  Id.  An officer told Plaintiff someone would come get the jail uniform.  Id.  However, Plaintiff was left in the suicide cell in his jail uniform overnight.  Id.  The next morning, on August 9, 2018, two CCDF officers, Defendants Savage and Grant, ordered Plaintiff to remove the jail uniform.  Id. at 10.  Plaintiff did not want to remove the uniform, so he requested to speak to Defendant Savage's supervisor.  Id.  Defendant Grant called the sergeant in charge, Defendant Phillips, to the suicide cell.  Id. Defendant Phillips opened the cell door and spoke with Plaintiff in an attempt to deescalate the situation and gain Plaintiff's compliance without physical intervention.  Id.  Plaintiff refused to change into the suicide smock.  Id.

6

Defendants Savage, Grant, and Phillips attempted to remove Plaintiff's jail uniform. Id. at 11. Plaintiff resisted and refused to comply, so Defendant Phillips brought Plaintiff to the floor. Id. Plaintiff remained non-compliant and struggled with the officers, so Phillips placed his knee on Plaintiff's upper back while Plaintiff was handcuffed. Id. Rather than remove Plaintiff's jail uniform, Defendants escorted Plaintiff to the restraint chair. Id. After Plaintiff was released from the restraint chair, a nurse performed a medical evaluation. Id. at 12. The nurse noted Plaintiff reported pain to his right arm and neck and he lost a toenail. Id. All of Plaintiff's pending claims concern the events described above, occurring between August 1, 2018 and August 9, 2018.[2] Doc. 32.

When Plaintiff initiated this suit in August 2020, he was incarcerated by the Georgia Department of Corrections ("GDC") at Autry State Prison ("ASP"). Doc. 85-1 at 1. Indigent prisoners at ASP, those without the necessary fund in their accounts, may ask GDC to provide postage to mail letters and other documents through the U.S. Mail. Id. at 2. The indigent prisoner submits a completed form, titled "Request for Indigent Postage," into a mailbox along with his mail that needs postage. Id. Every workday, Monday through Friday, the mailroom officer collects all indigent mail and Requests for Indigent Postage submitted that day and takes the mail to the ASP business office. Id. An ASP business clerk confirms each prisoner requesting postage meets the definition of indigent, applies the needed postage to each envelope, and returns the stamped mail to the mailroom officer. Id. The mailroom officer takes all the

---

[2] In Plaintiff's Amended Complaint, he alleged he was placed in a suicide cell from August 2, 2018 to August 18, 2018, and this placement formed the basis for at least one of his claims. Doc. 32 at 10–11. However, the Court dismissed Plaintiff's claims based on that placement, leaving only claims for excessive force, which were based on events that occurred on August 2, 2018 and August 9, 2018. Docs. 52, 56. Even if August 18, 2018 was the latest date of relevant conduct (and it is not for the pending claims), it would have no impact on the Court's statute-of-limitations analysis. Plaintiff did not file his Complaint until August 20, 2020, which is still more than two years after the last date Plaintiff claims to have been held in a suicide cell.

stamped indigent mail to the U.S. Postal Service system.  Id.  The collecting, stamping, and mailing all occur on the same day.  Id.

ASP maintains a prisoner account titled "Obligations & Related Withdrawals," which documents the date, location, and purpose of the legal and personal mail for each transaction.  Id.  According to the entries in Plaintiff's account, Plaintiff submitted requests for postage for legal mail on July 16, 2020, August 20, 2020, and August 25, 2020.  Id. at 2–3.  Plaintiff dated his Complaint August 1, 2020, and it was docketed on August 25, 2020.  Id.

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any

material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the non-moving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. The Statute of Limitations Bars Plaintiff's Claims

Defendants argue Plaintiff's claims are barred by the statute of limitations because Plaintiff failed to mail his Complaint within two years of the use-of-force incidents that form the bases of his claims. Doc. 85-2 at 11–12.

### A. Legal Standard

Constitutional claims brought under § 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33. Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003).

Generally, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id. "The statute of limitations for claims brought under § 1983 begins to run when facts supporting the cause of action are or should be reasonably apparent to the claimant." Johnson v. County of Paulding, 780 F. App'x 796, 798 (11th Cir. 2019) (citing Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003)).

"In these [§ 1983] cases, *the date of filing shall be that of delivery to prison officials* of a complaint or other papers destined for the district court for the purpose of ascertaining timeliness." Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993) (emphasis in original); see also Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it." United States v. Glover, 686 F.3d 1203 (11th Cir. 2012) (citing Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001)), *abrogated on other grounds by amendment to* U.S.S.G. § 1B1.10. "[B]ecause the prison authorities have the ability to establish the correct date of delivery through their logs, they bear the 'burden of proof for the pro se prisoner's date of delivering his document to be filed in court.'" Sanders v. Headley, No. 2:19-CV-793, 2022 WL 18587038, at *1 (M.D. Ala. Dec. 7, 2022), *report and recommendation adopted*, 2023 WL 1769179 (M.D. Ala. Feb. 3, 2023) (quoting Garvey v. Vaughn, 993 F.2d 776, 781 (11th Cir. 1993)); see also Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

### B. Analysis

#### 1. The statute of limitations on Plaintiff's claims expired no later than August 9, 2020.

Plaintiff's pending claims concern two factual circumstances: (1) an alleged excessive use of force on August 2, 2018; and (2) an alleged excessive use of force on August 9, 2018. See Doc. 1 at 10–12. Under applicable law, the two-year statute of limitations began to run on the dates Defendants allegedly used excessive force against Plaintiff, because the facts giving rise to excessive force claims became apparent to Plaintiff at that time. Therefore, the statute of limitations for Plaintiff's excessive force claims expired, at the latest, on August 9, 2020.

There is no apparent basis for tolling Plaintiff's claims. See Bridgewater v. DeKalb County, No. 1:10-cv-1082, 2010 WL 11507266, at *6–8 (N.D. Ga. July 12, 2010) (providing a discussion on the tolling provisions available under Georgia and federal law). Georgia law provides the limitations period may be tolled in the following circumstances: (1) the party is legally incompetent, O.C.G.A. § 9-3-90; (2) the person becomes legally incompetent after the right accrues, O.C.G.A. § 9-3-91; (3) an estate becomes unrepresented, O.C.G.A. §§ 9-3-92, 9-3-93; (4) the defendant is absent from the State, O.C.G.A. § 9-3-94; (5) one party in a joint action is legally incompetent, O.C.G.A. § 9-3-95; (6) there is fraud by the defendant, O.C.G.A. 9-3-36; (7) there are counterclaims and cross claims, O.C.G.A. § 9-3-37; (8) the party is bringing a medical malpractice claim, O.C.G.A. § 9-3-97.1; (9) a tort arises from a crime, O.C.G.A. § 9-3-99; and (10) there is a non-statutory basis for equitable tolling. Bridgewater, 2010 WL 11507266, at *6 (citing State v. Private Truck Council, Inc., 371 S.E.2d 378, 380–81 (Ga. 1988)).

Additionally, there is no basis for non-statutory equitable tolling in this case. "Georgia's non-statutory doctrine of equitable tolling is extremely narrow," and the only discussion of non-

11

statutory equitable tolling in the Georgia courts is in the context of a class action lawsuit. Id. at *7 (citing Hicks v. City of Savannah, No. 4:08-cv-06, 2008 WL 2677128, at *2 (S.D. Ga. July 8, 2008), and Private Truck Council of Am., Inc., 371 S.E.2d at 380). Because Plaintiff brings a § 1983 claim and not a class action, the claim is not tolled under Georgia's non-statutory equitable tolling. See id. (holding same). Accordingly, Plaintiff should have filed his lawsuit on or before August 9, 2020, for any of his surviving claims to fall within the statute of limitations.

### 2. *Plaintiff filed his Complaint on August 20, 2020, which is after the expiration of the statute of limitations.*

Under applicable law, the date Plaintiff signed his Complaint is the day the Court deems it filed, for the purpose of a timeliness determination, unless Defendants prove the Complaint was delivered to prison officials for mailing on a different date. See Glover, 686 F.3d at 1203.

Plaintiff signed his original Complaint on August 1, 2020. Doc. 1 at 11. The Clerk of Court received and docketed Plaintiff's Complaint on August 25, 2020. Absent other evidence, the Court would assume August 1, 2020—the date Plaintiff signed his Complaint—is the date Plaintiff filed his Complaint. But there is other evidence. Indeed, the undisputed evidence demonstrates Plaintiff delivered his Complaint to prison officials on August 20, 2020.

Officials at ASP record the date each piece mail is sent through its indigent mail program and whether the mail is legal or non-legal. Doc. 85-3. ASP's records also reflect the day each indigent prisoner's letters were stamped and mailed. Id. at 2. Each business day, Monday through Friday, prison officials collect the letters prisoners deliver for stamping and mailing. Id. The ASP records show legal mail was collected from Plaintiff on July 16, 2020, doc. 85-4 at 1, but that date occurred before Plaintiff signed his Complaint, so it cannot be the date Plaintiff delivered the Complaint for mailing. The ASP records show no other legal mail was collected

from Plaintiff after July 16, 2020 until August 20, 2020.³ Id. This evidence—which Plaintiff has not disputed—demonstrates Plaintiff submitted his Complaint in this action on August 20, 2020, which after the applicable statute of limitations period closed.

In sum, the record shows Plaintiff did not deliver his Complaint to prison officials for mailing on August 1, 2020. Therefore, the Court does not deem it filed on the day it was signed. The record also establishes Plaintiff did not deliver his Complaint to prison officials for mailing on or before August 9, 2020, the day the applicable statute of limitations expired but, instead, delivered the Complaint to prison officials for mailing on August 20, 2020. Therefore, Defendants are entitled to summary judgment. Because I find Plaintiff failed to file his Complaint within the applicable statute of limitations, I decline to address whether Defendants are entitled to qualified immunity. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.⁴

### III.  Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P.

---

³ The ASP records contain three entries—on July 31, 2020, August 10, 2020, and August 17, 2020—for nonlegal mail sent by Plaintiff. There is no indication Plaintiff sent his Complaint to the Court using non-legal mail. To the contrary, the envelope in which Plaintiff mailed his Complaint bears a stamp from ASP indicating the envelope contains legal mail. Doc. 1 at 22. Additionally, the non-legal mail entries reflect Plaintiff obtained two, one, and two stamps, respectively, for those non-legal mailings. In contrast, the August 20, 2020 legal mail entry shows Plaintiff obtained four stamps, and there are four stamps affixed to the envelope in which Plaintiff mailed his Complaint to the Court.

⁴ Since it is unclear whether Defendant Dillio has been properly served, Defendants did not ask the Court to rule on the claims against him. However, the same statute of limitations period applies to Plaintiff's claims against Defendant Dillio because Plaintiff's allegations against Defendant Dillio concern the same dates as the other remaining Defendants. Doc. 32 at 8–12. Therefore, Plaintiff's claims against Defendant Dillio are due to be dismissed on the same grounds.

24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' unopposed Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 25th day of July, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA